RICHARDSON'S
ADMINISTRATORS
*vs.*
SPENCER,
MARSHALL, &c.

Case 51.

.PET. EQ..

## Richardson's Adm'rs *vs.* Spencer, Marshall, &c.

### APPEAL FROM GREEN CIRCUIT.

1. A husband who has conveyed a separate estate in slaves to trustees for the benefit of his wife is not, upon the death of the wife, enti-tled:to the slaves as survivor of his wife; but as administrator of his wife he had a right to the slaves against all the world, except credi-tors of the wife. (1 *Roper,* 203; 11 *B. Monroe,* 139; *Bright on Hus- band and Wife,* 1 *vol.* 41.)

2. When an administrator properly sues in equity to recover assets, the joining a distributee with him in the suit will not prejudice his right to a recovery.

3. Courts of equity scrutinize·with great jealousy all contracts between parties occupying a fiducial relation to each other—such as guardian and ward, attorney and client, trustee and *cestui que trust*—and the *onus probandi* of proving the utmost fairness in the transaction de-volves on. the fiduciary. (1 *Story's Eq.* 360, 61.)

4. A trustee will not be allowed to make profit for himself in conduct-ing the business of his *cestui que trust,* nor to place himself in an attitude inconsistent with the interest of the *cestui que trust,* or which may tend to interfere with the faithful discharge of his duty as trus-tee. (*Ib.* 361.)

5. That the trust property has not come into the possession of the trustees when a contract of purchase is made, will not give the con-tract any additional validity. If it appear not to be fair and equal the court will vacate and set it aside.

Chief Justice WHEAT did not sit in this case.

[The facts of the case are stated in the opinion of the court.—REP ]

*E. Barbee,* for appellants—

The appellees rely on two grounds to sustain the opinion of the circuit court dismissing the petition of appellants:

1. That the trustees, by virtue of the bill of sale from Mrs. Richardson to them, of the 26th of Octo-ber, 1841, acquired the absolute property in the slaves in contest.

2. That in the death of Mrs. Richardson all inte-rest she had in the slaves passed to her husband who survived her, and not to her administrator.

In regard to the first ground, it is insisted, for the appellant, that the sale made to the trustees by Mrs. Richardson was invalid for several reasons: 1. The Trustees were not in a position to make a purchase of the *cestui que trust.* 2. The contract was not based on a full and fair consideration.

As trustees it was the duty of Marshall and Spencer to guard the interest of their *cestui que trust* against every danger to which it might be exposed, and they had no right to trafic with their *cestui que trust* to their own profit and to her prejudice. (*Story's Eq.* 321-2.)

By the contract of compromise with Buckner, who claimed an interest in the slaves held in trust, the trustees attempted to acquire an interest in the trust estate for their own benefit. This they could not do; if the claim purchased was of value the purchase should inure to the benefit of Mrs. Richardson's estate. (1 *Madd.* 455.)

On the second objection it is sufficient to say that no right survived to Richardson upon the death of his wife, but the right to administer on her estate; he declined that; as survivor he had no right to the property which he had deeded to trustees; he, moreover, had released all right to the slaves in controversy.

The facts show clearly that the trustees, up to a very short time before Mrs. Richardson's death, treated the slaves as trust property, and it should be so treated yet, and the case decided, giving to the heirs of Mrs. Richardson their respective shares in the slaves.

*J. T. Golder*, on the same side—

As respects the right asserted by appellees to the slaves in contest, as derived from their alleged purchase of Mrs. Richardson, it cannot avail them—1. Because a trustee cannot purchase the property held in trust, of the *cestui que trust*, except for a full and adequate consideration; and the *onus probandi* of

RICHARDSON'S
ADMINISTRATORS
vs.
SPENCER,
MARSHALL, &c.

showing this fairness devolves on the trustee, which is not done in this case. (*Pugh's heirs and ex'ors vs Bell's heirs*, 1 *J. J. Marshall*, 339; *Story's Eq.* 1 *vol. page* 324, *sec.* 321; *Narcissa's ex'ors. vs Wathen, &c.* 2 *B. Monroe*, 243.) The only consideration which the trustees attempt to show passed to Mrs. Richardson, was their obligation binding them to account to her for the hire of one-third of the slaves for her life, which imposed no obligation on them as trustees, which did not before exist, at least to that extent, for all the heirs of Estes conceded her right to one-third of the slaves during her life; then she surrendered to the trustees, according to their account of the transaction, her claim in fee to all the slaves, to get the hire of one-third of them secured to her for life, to which she would be entitled in any event, no one disputing her claim to that extent. This bond seems to have been treated by the parties, ever afterwards, as a nullity; for though Mrs. Richardson lived upwards of nine years afterwards, they do not pretend that they ever paid one cent of the hire, or that she ever claimed it; all that the proof shows that she ever received upon it from them, or either of them, is what Spencer paid her, which was not upon the obligation, but upon his obligation subsequently executed for the hire of the boy Anderson. It is true that the transfer purports to be for the farther consideration of five dollars, but that is merely nominal; and it is alleged, and not denied, that this was never paid.

2. It is manifestly clear, from the circumstances and proof, that she made the transfer to them not with the intention of conferring upon them the benefit of her claim to the slaves, but merely for the purpose of conferring upon them the power to manage and control the then threatened suit of Estes' heirs, as they might think proper; such was the understanding at that time, and if the trustees had a different object in view then they acted fraudulently in obtaining the transfer, and for that reason, if no other,

it ought to be cancelled. Joseph Richardson, the husband, proves that to have been the object of the transfer, and the conduct of the trustees, down to the death of Mrs. Richardson, corroborates that statement; nor did the trustees ever assert any right until her death. They held them as trustees, listed them for taxation as trustees, and Spencer, one of the trustees, paid hire for one of the slaves for all the time he kept him; and as late as eight years and one day after the date of the transfer, Spencer gave his note for $75 for the hire of Anderson, one of the slaves, reciting in the note that it was for previous hire, and also acknowledging that he was held in trust for Mrs. Richardson, and that he was to keep him thereafter at his reasonable worth.

The denial of the trustees that they ever took possession of the slaves as trustees cannot avail; they had accepted the title and the trust while the slaves were out on hire, and the fiducial relation was complete, and the duties of the parties fixed.

The court will observe that in the conveyance by Buckner, of his claim to them, Spencer and Marshall acknowledge that the slaves had been conveyed to them as trustees, but in the conveyance of Buckner the conveyance is not made to them *as* trustees, but not saying anything of the transfer from Mrs. Richardson.

The trustees assert right under the purchase of Buckner's claim, but this cannot avail—the *cestui que trust* is entitled to the benefit of that purchase. (See *McClanahan's heirs vs Henderson's heirs*, 2 *Marshall*, 389; *Morrison's ex'or and devisees vs Caldwell*, 5 *Monroe*, 435; *Bowling's heirs vs Dobyn's admr.* 5 *Dana*, 446; *Story's Eq.* 2 *vol. sec.* 1, 211.)

3. The third ground relied on by appellees cannot avail them; for if it be admitted that the term *heirs*, used in the deed of trust from Richardson to the trustees, should be regarded as a word of *limitation* and not of *purchase*, still, according to the well established rule of construction, the donor could not

RICHARDSON'S
ADMINISTRATORS
*vs.*
SPENCER,
MARSHALL, &c

claim any interest in the property conveyed upon the death of his wife, who was the beneficiary in the deed, neither upon the ground that the trust had been performed, or had failed by the death of the beneficiary, and that the property had reverted to the donor, nor upon the ground that he was entitled as surviving husband and distributee of his wife's estate.

In the construction of instruments the great object is to carry out the intention of the parties, by reference to the deed, and if ambiguons, call in aid facts *dehors* the instrument—as the state and condition of the parties, &c., the action of the parties under the contract, &c. (See *Thompson vs Thompson,* 2 *B. Monroe,* 166.)

The conveyance made by Richardson was made in compliance with an ante-nuptial contract, and the instrument shows a clear intention on the part of Richardson to divest himself completely of all title to the slaves, &c., in behalf of his wife and her heirs, and to give her the right to dispose of it as she should think proper. He moreover, in his answer, disclaims all interest in the slaves in favor of his late wife's heirs.

There can be no good reason assigned why the administrator of Mrs. Richardson should not recover in this suit; the uniting of some of the heirs cannot prejudice the administrator's right to recover from these defendants, the trustees.

*A. Harding,* for appellees—

The first question is as to the power of Mrs. Richardson to sell the slaves to Marshall and Spencer.

It is true that Jo. Richardson, the husband, did not in form unite in the sale, but he was present, and as he admits heard the transfer read saw his wife sign it; told his son to witness it, and made no objection to it; he cannot, therefore, nor can any one claiming under him, assert title in opposition to the transfer.

The ante-nuptial agreement recited in the deed of trust was, in substance, that the property of Mrs. Richardson was to be secured to her, "to hold to her separate use, and be disposed of as she might think proper." The object of the deed of trust was to carry into effect this agreement. Though Mrs. Richardson labored under the disability of coverture, still, in regard to her separate property, she was to be considered and treated in equity as a *feme sole*, and her sale was therefore binding in equity. (*Story's Eq.* 1 *vol. sec.* 243.) The same doctrine is still more fully stated in 2 *vol. Story's Eq. secs.* 1388, 89, 90, and 91, in which it said, "all ante-nuptial agreements, se-
' curing a wife separate property will, unless the
' contrary is stipulated or implied, give her in equity
' the full power of disposing of the same, whether
' real or personal, by any suitable act or instrument,
' in her life time, or by her last will, in the same
' manner and to the same extent as if she were a.
' *feme sole*." The same author says courts of equity will enforce the contracts of *feme coverts* in regard to their separate property against her heirs.

2. The next question to be noticed is, whether Marshall and Spencer, being trustees, could purchase from their *cestui que trust*. Courts of equity, it is admitted, look with a jealous eye to contracts of this kind, but still such contracts are protected and sustained when they are made without fraud or undue influence on the part of the trustee. The rule, as laid down by Story, is this: "A trustee is never per-
' mitted to partake of the bounty of the party for
' whom he acts, except under circumstances which
' would make the act valid if it were a case of guar-
' dianship;" or, to use the expressive language of an eminent judge, "A trustee may purchase of his
' *cestui que trust*, provided *there is a distinct and clear*
' *contract*, ascertained to be such, after a jealous and
' scrupulous examination of all the circumstances,
' and it is clear that the *cestui que trust* intended that
' he should buy, and there is no fraud, no conceal-

RICHARDSON'S
ADMR'S
*vs*
SPENCER,
MARSHALL, &c.

' ment, and no advantage taken by the trustee, of in-
' formation acquired by him as trustee." (1 *Story*,
*sec.* 322.) Tested by this rule we think there can be
no doubt that the purchase made by Marshall and
Spencer is valid, and ought to be sustained. The
deed of 26th October, 1841, from Mrs. Richardson to
Marshall and Spencer, and their obligation of the
same date to her, was all one transaction. These
papers show a distinct contract. She sells and con-
veys, absolutely, to Marshall and Spencer all her inte-
rest in the slaves, in consideration of which they
bind themselves to account to her during her life for
one-third of the hire of all the slaves mentioned in
the previous deed of trust. This obligation is fully
set forth in both instruments; her deed is delivered
to Marshall and Spencer, and their obligation is de-
livered to and retained by her until her death.

It is farther evident, from the deposition. of Jo.
Richardson, the husband, as shown by the letter in-
corporated in and made part of his deposition, that
Mrs. Richardson had it in contemplation to give to
Marshall, who was her brother, and to Spencer, who
was her nephew, "finally the benefit of the slaves
distributed;" the same intention is proved by Ben.
T. Marshall. The proof shows that Marshall and
Spencer complied with their contract, and Mrs. Rich-
ardson always recognized the sale she had made to
be valid, and was well satisfied with it during her
life.

The price was adequate, and there is no evidence
of fraud or undue advantage; on the contrary, the
contract was an advantageous contract for Mrs. Rich-
ardson. She had only a life estate in one-third of
the slaves, and this was secured to her by the con-
tract with Marshall and Spencer, who had bound
themselves to pay the hire, and to defend all suits at
their own costs and charges—one suit had been
brought against her, and others expected. These
circumstances show that the consideration was full
and fair, and that in fact it was a good contract for

Mrs. Richardson, in the circumstances in which she was placed.

The appellants are seeking to have the benefit of the labor, trouble, and expense incurred by Marshall and Spencer in the management of the business which they undertook, and the benefit of their purchase of Buckner's interest in the slaves, to which they contributed nothing, and in which Mrs. Richardson, to whom they claim to be heirs, had no interest.

But if this view of the subject be not regarded as correct, and that the title acquired by Marshall and Spencer of Buckner vested beneficially in Mrs. Richardson, still it is insisted that the plaintiffs cannot succeed in this suit, because, in that case, on the death of Mrs. Richardson any interest which Mrs. Richardson had in the slaves vested by law in her husband, Jo. Richardson, who survived her. This is settled in the cases of *Cox vs Coleman's admr.* 13 *B. Monroe,* 451; *Sanders' exor. vs Sanders,* 12 *Ib.* 42; *Brown vs Alden, &c.* 14 *Ib.* 141. The disclaimer of interest by Jo. Richardson in his answer cannot avail; it confers no title in the appellants, nor do they sue upon that title, but upon the title which they suppose they have as heirs, and if that fails their suit must fail. And the answer was filed, too, when the appellees were in the adverse possession of the slaves, and could not pass title in them; moreover, Richardson's answer cannot be taken as evidence against Spencer and Marshall for any purpose.

*Saml. A. Spencer,* on the same side—

The following questions arise in this case:

1. Did Marshall and Spencer acquire title to the slaves in contest by there contract with Mrs. Richardson?

2. If not, to whom did the slaves descend upon her death?

3. Have the plaintiffs a right to maintain this action as heirs of Henrietta Richardson? If not, does

the answer of Jo. Richardson, disclaiming any right or claim, vest a right in the plaintiffs?

The proof shows that the contract of Marshall and Spencer with Mrs. Richardson was fair, upon good consideration, and made with the approbation of her husband; and by this contract her title passed to Marshall and Spencer.

The slaves were originally the property of John D. Estis, a former husband of Mrs. H. Richardson. Estis died in 1833, and the slaves descended to his brothers and sisters, subject to the dower claim of his widow. He had no children. Estis made a nuncupative will, giving the slaves to his widow, which passed no right to her. In 1835 the widow intermarried with Jo. Richardson.

What was the right which Jo. Richardson acquired in the slaves in virtue of his marriage with the widow? The answer is, no interest save the dower interest, which vested in the widow on the death of her husband. In the year 1841, (15th October,) the heirs of John D. Estis being about to sue Richardson and wife for the negroes, Richardson became alarmed at the idea of being sued and held responsible for the slaves, endeavored to avoid it by executing the deed of trust in compliance with an ante-nuptial contract between him and his wife before marriage; by this deed the slaves were conveyed to Marshall and Spencer as trustees for his wife, the former widow of Estis. The trustees were not to take the control of the slaves until the end of the year 1841.

On the 26th October, 1841, before yet Marshall and Spencer had taken possession of the slaves, Mrs. Richardson, with the consent of her husband and his advise, sold and conveyed to Marshall and Spencer all her claim to the slaves of which her former husband, Estis, had died possessed, in consideration of Marshall and Spencer's undertaking and binding themselves, in writing, to pay her one-third of the hire of the slaves during her life. This was a fair equivalent for the interest of Mrs. Richardson in the

slaves; she was relieved from all responsibility for costs; all trouble in settling the conflicting claims about to arise. There is nothing in the case in any degree going to show any fraud, or unfairness on the part of the purchaser, or any improper influence exerted.

The next inquiry is, had Mrs. Richardson the power to dispose of her interest in the slaves thus secured to her separate use? This right is regarded as unquestionable; and in support of the affirmative of the proposition refer the court to the following authorities: 2 *Story's Eq.* 2 *vol. secs.* 1388 *and* 1391.

Estis' heirs did sue for the negroes shortly after the sale to Marshall and Spencer, and the suit was by them compromised with their attorney, Buckner, who had the control of the suit on the 15th January, 1842, and the claim of Estis' heirs was quieted. The proof shows that the friends of Mrs. Richardson had refused to aid her in the defense of the suit which was anticipated for the recovery of the negroes.

The proof shows, farther, that Mrs. Richardson contemplated giving to Marshall and Spencer a beneficial interest in the slaves, or the right to the slaves, and she was, to some extent at least, induced to commit to them the management, and afterwards to sell the right to them also.

But if the foregoing views should not meet the views of this court, let it be supposed, for the sake of the argument, that no title passed to Marshall and Spencer by their contract of purchase, and that they should account for the slaves, to whom are they responsible? To whom did the slaves descend at the death of Mrs. Richardson in March, 1850? Certainly not to the plaintiffs; and if they acquired no title by descent they have none and on this point the whole case might be rested. That no right passed to them by descent is evident from the former decisions of this court. (See *Cox vs Coleman's admr.* 13 *B. Monroe,* 450; *Brown, &c. vs Alden,* 14 *Ib.* 141.)

RICHARDSON'S
ADMR'S
*vs.*
SPENCER,
MARSHALL, &c.

The answer of Jo. Richardson is not the transfer of any right which will sustain the appellants claim in this suit. The answer of Richardson is not evidence against Marshall and Spencer. (*Jones vs Bullock*, 3 *Bibb*, 468.) And besides the slaves were in the adverse possession of Marshall and Spencer when the answer was filed, and Richardson's sale would not have passed any title. (*Young vs Ferguson*, 1 *Litt.* 298.)

Oct. 15, 1857.

Judge STITES delivered the opinion of the court.

This was a petition in equity brought by appellants as the personal representatives and heirs at law of Henrietta Richardson, deceased, against the appellees, to compel a sale and division of certain slaves alledged to be in the possession of the latter as trustees of said Henrietta Richardson, and for a settlement of their accounts for hire of the slaves whilst in their possession.

The relief was resisted upon two grounds set forth in the answer:

1st. That appellees were the rightful owners of the slaves by purchase from their *cestui que trust* in her lifetime, and held them, not as trustees, but in their own right; and

2d. That appellants were not entitled to them as the heirs and representative of their intestate, and could not maintain the action.

The circuit court dismissed the petition upon final hearing, and appellants have brought the case up.

It seems that John Estes died in 1833, leaving a widow, Henrietta Estes, but no children, and at his death was the owner of a number of slaves, including those in controversy or their mother, which he attempted to devise to his wife by a nuncupative will. The widow, claiming title under the will, took and retained possession of the slaves until her marriage with Joseph Richardson, which occurred in a few years after the death of her first husband. Prior

to this last marriage, she and Richardson made a parol agreement, by which it was understood that each party was to have, control and use their separate property owned before marriage, as though no marriage existed. And in 1841, some years after the marriage, deeds were interchanged between them, carrying into effect, as they supposed and intended, their ante-nuptial contract.

Richardson conveyed his wife's property, including the slaves, to W. A. Marshall, and Samuel A. Spencer, the appellees, in trust for the separate "use and benefit of the said Henrietta and her heirs forever," stipulating in the deed, that, in the event of a suit or controversy about the slaves, he was to be free from all liability for costs, &c.; and the trustees were to defend such suit in his wife's name without the use of his. The deed recited moreover, that the slaves so conveyed, were then on hire until the 25th December next ensuing, at the expiration of which term the trustees were to receive them for the purposes of the trust. The deed was executed on the 15th October, 1841, and, on the same day, the trustees, in writing, formally accepted the trust, and undertook its execution.

On the 26th October, 1841, Henrietta Richardson, the *cestui que trust*, in the presence of her husband, conveyed the slaves to her trustees, in consideration of five dollars, and that they had, on the same day bound themselves to account to her after the 25th December ensuing for *one-third* of the slaves or their hire during her life. The obligation referred to in this bill of sale or conveyance of the slaves, was, in substance, that they, the trustees, would, after christmas next ensuing, furnish her a suitable maintenance, when she required it, to the amount of *one-third* of the hire of the slaves conveyed, to be paid her from time to time and in such things as she should require, &c. The slaves were taken into possession by the trustees at the expiration of the year 1841.

RICHARDSON'S
ADM'RS
vs.
SPENCER,
MARSHALL, &c.

Meanwhile, and before these several transactions, the heirs at law of Estes, the first husband, or their vendee, Buckner, asserted claim to the slaves upon the ground that Mrs. Richardson acquired no title by the nuncupative will, and that whatever interest she had was as widow, and for life only. And, about the same time, proceedings were begun to enforce their claim, and for a division of the slaves, and hire, &c.

This suit was compromised in February, 1842, by a division of the slaves between the trustees, and Buckner the vendee of Estes' heirs, and the payment of six hundred dollars by Joseph Richardson the husband in discharge of any liability against him; and, under this compromise, Buckner transferred and assigned to Marshall and Spencer, and Richardson his several bills of sale from Estes' heirs, and executed to Richardson a release from all claim for hire, &c.

The slaves that were allotted to Spencer and Marshall in the division continued in their possession, and were listed for taxation as trust property, during the life of Mrs. Richardson.

Upon her death, her husband having refused to qualify as administrator, letters of administration were granted upon her estate to Beverly Marshall one of the appellants; and, the trustees having refused to deliver the slaves or account for hire, this suit was brought by the administrator in conjunction with a portion of the distributees for a sale and division of the slaves, and for hire, &c.

Joseph Richardson, the surviving husband, was made a defendant, and answered, disclaiming all interest in the subject matter of controversy, and conceded the right of the plaintiffs to the slaves and hire.

1. The first inquiry is, whether this suit is maintainable in the names of the appellants.

It is contended by appellees, that as, by the terms of the deed of trust, Mrs. Richardson was invested

with a separate beneficial estate in fee in the slaves therein mentioned, that such estate upon her death vested in the surviving husband; and, as no sale of the slaves was made by the husband to appellants prior to the commencement of the suit, or could have been made whilst appellees were in adverse possession so as to vest any rights in appellants, that the mere disclaimer of the husband during the pendency of the suit, did not operate as an investiture of title in appellants, or confer any right upon them to maintain the suit. And in support of this position we are referred to *Cox. vs. Coleman,* 13 *Ben. Mon.* 452, and other cases therein cited.

The interest of the wife in the slaves, at the time of her marriage, under the laws then in force, vested absolutely in the husband when they came to his possession, and constituted a part of his estate. He divested himself of that interest by the deed to the trustees, and conferred upon them the legal title and upon his wife a separate trust estate in fee. In this separate estate he had no interest during her life and could have exercised no control over it, nor in anywise disturbed her or her trustees in its possession. In such cases the right by survivorship does not exist. He had the right to administer on his wife's estate, and as administrator, would have been entitled, except as to creditors, to retain the assets without distribution. (1 *Roper*. 203; 11 *Ben. Monroe,* 139.)

The case of *Cox vs. Coleman* is not at variance with the opinion here expressed.

The question there was whether the personal representative of the heir at law of a deceased wife could recover from the trustees of the wife slaves held by him for the separate use of the wife and her issue, she having died without issue, but her husband surviving. It was decided that the recovery could not be had, because the surviving husband was entitled either as survivor, distributee, or administrator. But it was not decided, nor was it then necessary to

RICHARDSON'S ADM'RS *vs.* SPENCER, MARSHALL, &c.

1. A husband who has conveyed a separate estate in slaves to trustees for the benefit of his wife is not, upon the death of his wife, entitled to the slaves as survivor of his wife; but as administrator of his wife he had a right to the slaves against all the world, except creditors of the wife. (1 *Roper*, 203; 11 *B. Monroe,* 139; *Bright on Husband and Wife,* 1 *vol.* 41.)

RICHARDSON'S
ADM'RS
vs.
SPENCER,
MARSHALL, &c.

decide, in which capacity he took.   It was sufficient
to say that in one or the  other his  right was para-
mount to that of the plaintiff.

That the court did not  intend to say that he took
as survivor, is obvious from the reference then made
to *Payne vs.  Payne,* (11  *B.  Monroe, supra,*) without
questioning  the principle, there laid  down, that, in
cases  similar to  that of  *Cox vs.  Coleman* and  the
present, the husband is entitled as administrator and
not as survivor, and which is in unison with other ad-
judications of this  court, and the courts of  England.
(*Bright on  Husband and  Wife,* 1 *vol.* 41; 1 *Roper* 204;
*and the authorities therein cited.*)

Here the husband though entitled to letters of ad-
ministration, waived his right in favor of  Beverly
Marshall, one of the  appellants, and whatever his
rights as distributee may be (a question not necessa-
ry to decide) the husband had no right to the posses-
sion of the assets of the wife.   The administrator
under these circumstances could alone sue for their
recovery.   If any doubt existed as to this right, in
opposition to the supposed right of the husband, such
doubt could not, in view of the disclaimer of the
husband, operate to the prejudice of the administra-
tor.

We are of opinion  therefore that the action  is

2. When an
administrator
properly sues in
equity to recov-
er  assets, the
joining a  dis-
tributee  with
him in the suit
will not preju-
dice his right to
a recovery.

maintainable in the  name of the administrator, and
the fact that some of the  distributees united with
him as plaintiffs does not prejudice his right.

The question next to be considered is, to whom do
the slaves in controversy belong.

It is  contended by appellants that  appellees as
trustees of Mrs.  Richardson had no  right  to make
profit for themselves out of the  trust property; that
any advantage resulting to them from the  arrange-
ment  with the *cestui  que trust,* and the  subsequent
compromise  with Buckner, inured to the  benefit of
the *cestui  que trust;* and, that they should not, to the
prejudice of her estate, be permitted to avail them-
selves of the pretended title acquired from her, whilst

they were acting as trustees. And further, that the facts show that they always recognized her right to the slaves and held them as her property up to her death, and not adversely.

On the side of appellees, it is insisted that, the interest of the *cestui que trust* in the slaves mentioned in the trust deed, was, by the terms of the deed, made her seperate property, subject to her control and disposal, and that she had the right to convey it at her discretion. And also, that, although they were her trustees, the property was not then in their possession, and inasmuch as her husband was present, and assented to the sale of her interest, and the consideration was adequate, and there was neither fraud nor imposition on their part, that the sale was valid and should be upheld.

Courts of equity view with jealousy and watchfulness all contracts made between parties occupying fiducial relations, such as guardian and ward, attorney and client, and trustee and *cestui que trust*. And so great is the apprehension that some undue advantage may have been taken by an attorney, trustee or guardian, in contracts with client, *cestui que trust*, or ward, and resulting beneficially to the former, that the *onus probandi* rests upon them to show the utmost fairness on their part. Or in other words, the good faith and honesty of purpose which the law presumes in ordinary contracts between strangers, must be made to appear in transactions between persons holding the relations mentioned. No presumptions are indulged in their behalf.

And in some of these relations, such as trustee and *cestui que trust*, it is not necessary in order to avoid such contracts, that the latter should show that some benefit has resulted to the trustee.

The rule is that a trustee cannot purchase of his *cestui que trust* unless there is a distinct and clear contract ascertained to be such by a jealous and scrupulous examination of all the circumstances, showing that the latter intended that the trustee should

*Margin notes:*

RICHARDSON'S ADMINISTRATORS *vs.* SPENCER, MARSHALL, &c.

3. Courts of equity scrutinize with great jealousy all contracts between parties occupying a fiducial relation to each other—such as guardian and ward, attorney and client, trustee and *cestui que trust*—and the *onus probandi* of proving the utmost fairness in the transaction devolves on the fiduciary. (*Story's Equity*, 360, 61.)

RICHARDSON'S
ADMR'S
*vs.*
SPENCER,
MARSHALL, &C.

4. A trustee will not be allowed to make profit for himself in conducting the business of his *cestui que trust,* nor to place himself in an attitude inconsistent with the interest of the *cestui que trust,* or which may tend to interfere with the faithful discharge of his duty as trustee.

5. That the trust property has not come into the possession of the trustees when a contract of purchase is made, will not give the contract any additional validity. If it appear not to be fair and equal the court will vacate and set it aside.

buy, and also that there is no fraud, concealment or advantage taken. And, as has been said, it is difficult to make out such a case. (1 *Story's Equity* 360–61.

Neither will a trustee be permitted to make profit for himself in managing the business of his *cestui que trust*. He is not allowed to put himself in any attitude inconsistent with the interests of his trust or which will tend to interfere with his duty in discharging it. (*Ibid,* 361.)

Applying these well established principles to this case, and we are compelled to the conclusion that the slaves held and claimed by the trustees in their own right, should be regarded as trust property, and as assets properly belonging to Mrs. Richardson's estate.

The trust was created and accepted before the contract of October 26th, 1841, was made. The relation of trustee and *cestui que trust* then subsisted, and all the safeguards and protection incident thereto were thrown around the latter, and interposed between her trustees and herself. The fact that the slaves had not then come to their hands, made no difference. They were vested with control over them, subject to the then almost expired term of the hirers, and took upon themselves all the duties imposed by the trust.

The contract in its most favorable aspect and conceding all that is claimed for it, was not such as she was entitled to. It only gives to her a life estate in one-third of the slaves conveyed, when by law she was a widow of Estes, who left no children, entitled to such estate in one-half. (7 *Ben. Monroe,* 113.) To this extent she was certainly prejudiced, and her trustees benefitted, and upon this ground if upon no other would the contract as between the *cestui que trust* and her trustee be vacated.

But again it appears that the trustees themselves, or at least Spencer, recognised as late as 1849, her right to the slaves by executing a note to her for

RICHARDSON'S
ADMINISTRATORS
vs.
SPENCER,
MARSHALL, &c.

hire in which he expressly says the slave therein named was held by him in trust for her. Thus showing that he in his transactions with her, induced her to believe that she was the owner of the property. The language of the obligation to her is inconsistent with the claim of ownership of the trustees, and is a circumstance that a court of equity will not disregard in scrutinizing a transaction between a trustee and *cestui que trust*.

In addition to this it appears that the slaves were listed for taxation as trust property and the lists furnished by the trustees.

These facts and others tending the same way force upon us the conviction that the contract was prejudicial to the interest of the *cestui que trust* and is not within that class of contracts between a *cestui que trust* and trustee, which a court of equity tolerates; and in our opinion the circuit court erred in not vacating it and adjudging the slaves in controversy to belong to Mrs. Richardson's estate.

Upon the return of the cause the court below will vacate the contract between the appellees and Mrs. Richardson, and direct the slaves to be divided among the distributees of her estate, if susceptible of a division in kind, if not, to be sold and the proceeds distributed. An account should be taken of hire, and after allowing appellees a reasonable and adequate compensation for their services as trustees, and for all necessary expenses incurred by them as trustees, the balance, if any, should come into the general fund for distribution. If the hire due the estate should not equal the amount herein directed to be allowed the trustees, any balance against the estate should be paid by the administrator out of assets in his hands.

For the reasons stated the judgment is *reversed*, and cause remanded for further proceedings not inconsistent with this opinion.